# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| MACDERMID, INCORPORATED d/b/a MEIS | ) <br> ) <br> ) Civil Action No. _____ |
| Plaintiff, | ) <br> ) |
| v. | ) JURY DEMANDED <br> ) |
| RAYMOND SELLE | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

## COMPLAINT

MacDermid, Incorporated d/b/a MEIS ("MacDermid") hereby files its Complaint against Defendant Raymond Selle ("Selle"), and states as follows:

## PARTIES

1. MacDermid is a Connecticut corporation with its principal place of business at 245 Freight Street, Waterbury, Connecticut, 06702.

2. Upon information and belief, Defendant Raymond Selle currently resides at 1185 W. Mountain View Road, Apartment 1222, Johnson City, Tennessee 37604-2529.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper in this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00. As an additional and alternative basis of jurisdiction, MacDermid would state that jurisdiction is proper in this Court pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, and the Court has supplemental jurisdiction over the state and common law claims under 28 U.S.C. § 1367(a).

1

4. This Court has personal jurisdiction over Selle because Selle is a resident of Tennessee.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district. As an additional and alternative basis, MacDermid would state that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1).

## FACTS

### I. The Parties

6. MacDermid, which is a subsidiary of Element Solutions Inc. ("Element Solutions"), is a leading specialty chemicals company.

7. Selle became an employee of MacDermid in late 2021 when Element Solutions acquired Coventya Holdings SAS. At that time, Selle was an employee of Coventya Holdings SAS's subsidiary Coventya, Inc. Coventya, Inc. employees became employees of MacDermid post-acquisition.

8. Selle worked as a regional sales and service director for MacDermid from 2021 until he retired on May 31, 2024.

9. As part of his employment, Selle signed an Employee's Agreement on May 1, 2022. A true and correct copy of Selle's Employee's Agreement is attached hereto as **Exhibit 1**.

10. Paragraph 2 of Selle's Employee's Agreement provides:

> I recognize that it would be detrimental and damaging to the Corporation and its business if any of its Secrets became known to its competitors or customers, present or future, and accordingly, I agree that I will not at any time during the term of my employment with the Corporation or at any time after termination thereof, use for my personal benefit or for the benefit of my subsequent employer any of the Corporation's . . . Secrets and will keep confidential and will not divulge or disclose any of the Secrets of the Corporation . . . to any other person except authorized personnel of the Corporation and such other persons as may be so authorized to receive the same by the Corporation.

(*See* **Exhibit 1** at ¶ 2).

11. The Employee's Agreement defines "Secrets" as "formulae, processes, manufacturing instructions, technical and marketing knowledge and techniques and other inventions and confidential information which constitute trade and business secrets." (*See* **Exhibit 1**, at 1).

12. Paragraph 3 of the Employee's Agreement further provides, in pertinent part:

> I agree that during my employment with the Corporation and for the twelve (12) months after the termination of my employment **I will not directly or indirectly, on my own account or as an employee, consultant, partner, owner, through stock ownership . . . or otherwise engage in any business competitive with that portion of the Corporation's business with which I was involved or was exposed to during my employment with it** . . . . I also agree that during my employment with the Corporation and for the twelve (12) months after the termination of my employment **I will not induce or attempt to induce any individual or entity which is then or has within the preceding twelve (12) month period been a customer or supplier of the Corporation to reduce such customer's or supplier's purchases from or sales to the Corporation**, by direct advertising or solicitation, or otherwise alter such customer's or supplier's contractual or other relationship with the Corporation, or disclose the name and/or requirements of any customer to any other person or persons, natural or corporate, or solicit any of the Corporation's employees to leave the employ of the Corporation.

(*See* **Exhibit 1** at ¶ 3) (emphasis added).

13. As an employee of MacDermid, Selle was also subject to its Business Conduct and Ethics Policy.

14. MacDermid's Business Conduct and Ethics Policy prohibits its employees from disclosing MacDermid's proprietary and confidential information, including trade secrets, to non-employees of MacDermid without authorization.

15. MacDermid's Business Conduct and Ethics Policy also prohibits its employees from taking for themselves personally opportunities that are discovered through the use of

3

corporate property, information, or position; using corporate property, information, or position for personal gain; and competing with MacDermid.

16. Selle signed an Acknowledgement of Receipt on September 22, 2021, in which he agreed to comply with MacDermid's Business Conduct and Ethics Policy and other policies.

17. In addition to having its employees agree to the confidentiality provisions in its employment agreements and Business Conduct and Ethics Policy, MacDermid protects its proprietary and confidential information, including trade secrets, by providing its employees with procedures for safeguarding confidentiality, limiting the number of employees with access to its formulas, requiring supervisor approval before accessing its formulas, password protecting its formulas, coding its raw materials so factory workers and others cannot learn its formulas, and requiring other parties to sign Non-Disclosure Agreements ("NDAs") or stricter confidentiality agreements before sharing detailed product information, customers lists, or pricing lists.

18. Furthermore, MacDermid's facilities are secure and access controlled, including its research and development locations and factories.

19. Despite his agreement to abide by MacDermid's policies, during his employment with MacDermid, Selle exhibited a pattern of unethical behavior, including but not limited to improperly disclosing MacDermid's confidential information, such as product formulations and pricing, and converting company funds for his personal benefit.

20. Upon information and belief, Selle was also secretly an employee of Calvary Industries, Inc. ("Calvary"), an Ohio-based chemical supplier and a direct competitor of MacDermid, at the same time that he worked for MacDermid.

21. During his employment with MacDermid, Selle repeatedly lied to MacDermid's customers about the company's relationship with Calvary and directed MacDermid's customers to purchase Calvary's products instead of MacDermid's products.

22. Upon information and belief, Selle also secretly worked for another competitor of MacDermid named Roy Metal Finishing Company, Inc. ("Roy Metal"), an independent metal surface coater, when he was working for MacDermid.

23. Further, upon information and belief, Selle accepted another job with yet another company, American Appliance, during his medical leave from MacDermid, which he later quit once confronted about it by MacDermid. Upon information and belief, had this additional "job" not been discovered by MacDermid, he would have held the jobs simultaneously in violation of his fiduciary duty to MacDermid.

## II. Selle's Improper and Unethical Business Practices

24. During his employment with MacDermid, Selle improperly disclosed MacDermid's pricing information, product formulas, and other confidential business information to third parties and repeatedly directed MacDermid's customers to purchase products from Calvary. Given Selle's secret relationship with Calvary, he did this to enrich himself at MacDermid's expense.

25. For example, on July 11, 2022, Selle emailed a representative of SSW Advanced Technologies, LLC ("SSW"), which is a customer of MacDermid, stating that to maintain a certain price SSW needed to purchase a particular product from MacDermid's "sister company" Calvary.

26. MacDermid is not affiliated with Calvary.

27. On October 19, 2022, Selle again emailed a representative of SSW, disclosing MacDermid's pricing for its spray cleaner and electrocleaner and comparing that pricing to Calvary's products. Selle also told the SSW representative that it would save money by switching

5

to Calvary. Obviously, steering its customers to competitors is harmful to MacDermid and violates Selle's fiduciary and contractual duties to his employer.

28. Subsequently, Selle disclosed the specific proprietary formulation of a product to another one of MacDermid's customers, Collis de Mexico ("Collis"), which is a subsidiary of SSW.

29. On March 9, 2023, Collis representative Jack Warren emailed Selle asking him what the main ingredients and percentages are in one of MacDermid's products. Mr. Warren stated he needed this information to move the product across the border into Mexico.

30. That same day, Selle emailed Mr. Warren back with the raw materials and percentages for MacDermid's product, information which is proprietary and is not to be shared with third parties.

31. Selle also told Mr. Warren that a competing Calvary product had exactly the same formulation as the MacDermid product at issue.

32. MacDermid discovered that Selle disclosed this proprietary information about its product when someone from the quality department at Collis asked a MacDermid employee if Collis could use the competing Calvary product, which it had received, in the same way it uses the MacDermid product. In connection with this conversation, the Collis employee sent the March 9, 2023 emails between Selle and Mr. Warren.

33. On June 23, 2023, MacDermid issued a disciplinary action form to Selle for his actions with Collis. MacDermid warned Selle that he must not disclose proprietary information or formulation, and that if he failed to do so, he would be terminated.

34. MacDermid later learned that shortly before it issued Selle this warning, in May 2023, Selle told SSW that MacDermid had transferred its manufacturing of certain products to

Calvary, which was false and, upon information and belief, was an attempt to cover up his wrongful double-dealing.

35. Then, on January 16, 2024, after receiving an inquiry about the pricing of one of MacDermid's products from a customer named Martron, Inc. ("Martron") via email, Selle told Martron that the product had been discontinued and replaced with a Calvary product that Selle said was the exact same product as MacDermid's product. Selle further stated that he would "handle within Calvary."

36. On February 22, 2024, Selle sent a Metex LDA Safety Data Sheet, which is a data sheet relating to one of MacDermid's products, to SSW using his personal email account.

37. In July 2024, MacDermid discovered that while Selle was working for MacDermid, he had an email address associated with Calvary.

38. Around the same time, MacDermid discovered that Selle also had an email address associated with Roy Metal.

39. Upon information and belief, Selle was working for Calvary and Roy Metal while he was an employee of MacDermid.

40. Upon information and belief, Selle improperly disclosed MacDermid's confidential and proprietary business information, including but not limited to product formulas and pricing.

41. During his employment with MacDermid, Selle also sent outgoing emails from his personal email account with MacDermid's corporate documents.

42. During his employment with MacDermid, Selle also took over 400 folders of MacDermid's confidential information using a large USB drive without permission, which included but was not limited to MacDermid's labels containing its product formulas, pricing lists, and customer lists.

43. Selle's disclosure of MacDermid's confidential and proprietary business information puts MacDermid at risk of losing its customers' business and was in violation of MacDermid's Business Conduct and Ethics Policy as well as Selle's Employee's Agreement.

44. Moreover, Selle's decision to direct MacDermid's customers to Calvary and directly compete with MacDermid while he was still employed was also in violation of MacDermid's Business Conduct and Ethics Policy as well as Selle's Employee's Agreement.

### III. The Unauthorized Shipments

45. From January through June of 2024, Selle sent unauthorized, extremely heavy shipments of items to Brazil using MacDermid's Federal Express account (the "Unauthorized Shipments").

46. The cost of the Unauthorized Shipments totaled $22,104.54.

47. Selle stole company funds from MacDermid by expensing to the company shipment costs of the Unauthorized Shipments to Brazil for his personal benefit.

48. In May 2024, torrential rainfall in Southern Brazil caused widespread flooding, forcing thousands to seek shelter and assistance.

49. On May 9, 2024, MacDermid solicited its employees for monetary donations to support the Brazilian flood victims through the following charities: Center for Disaster Philanthropy and Brazil Foundation.

50. Upon information and belief, Selle has family located in Brazil.

51. Upon information and belief, the Unauthorized Shipments were delivered to Selle's family members, including a person named Emily Selle.

52. However, the Unauthorized Shipments frequently listed an organization named Mission of Hope International as the recipient company name.

53. After it discovered the Unauthorized Shipments, MacDermid sent Selle a cease and desist letter on July 3, 2024.

54. In response to the cease and desist letter, Selle claimed MacDermid, through its shipping department, approved shipments to an organization called Christian Ministry in Brazil for the relief efforts of the flood victims in Southern Brazil.

55. Selle also claimed that the Unauthorized Shipments sent in June 2024 were approved by MacDermid's Brian Saas for testing in California and contained "Electroless Nickel plated samples" from TEAM Metal Finishing.

56. MacDermid confirmed with Mr. Saas that he did not authorize Selle to make any of the Unauthorized Shipments.

57. Additionally, the Unauthorized Shipments were clearly not made in connection with MacDermid's charity work to assist Brazilian flood victims because the Unauthorized Shipments began four months before the floods occurred, and neither Christian Ministry (the organization Selle claimed the Unauthorized Shipments were made to), nor Mission of Hope International (the recipient company name listed for the Unauthorized Shipments) were charities that MacDermid partnered with.

58. Moreover, upon information and belief, Christian Ministry and Mission of Hope International are not registered to operate in Brazil.

59. Upon information and belief, Selle used MacDermid's corporate funds to send the Unauthorized Shipments for his personal benefit.

60. Upon information and belief, when Selle left MacDermid, he wrongfully took numerous items of intellectual property that belong to MacDermid, such as client lists and detailed contact information.

# CAUSES OF ACTION

## COUNT ONE:
## VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)

61. MacDermid incorporates by reference all paragraphs above as if fully restated herein.

62. MacDermid's trade secrets, including but not limited to the formulation of its products, its pricing, and its customer lists ("MacDermid's Confidential Information and Trade Secrets"), are used in interstate commerce.

63. MacDermid's Confidential Information and Trade Secrets constitute trade secrets because they derive independent economic value from not being generally known and are not readily ascertainable by proper means by another person who can obtain economic value from their disclosure or use.

64. MacDermid's Confidential Information and Trade Secrets are also subject to reasonable measures to maintain their secrecy.

65. Upon information and belief, Selle knowingly used and disclosed MacDermid's Confidential Information and Trade Secrets without its consent by wrongfully sharing this information with third parties, despite his duty to maintain their secrecy, thus giving rise to claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA").

66. MacDermid has been damaged by Selle's unauthorized misappropriation of MacDermid's Confidential Information and Trade Secrets.

67. MacDermid is entitled to monetary relief against Selle under the DTSA for his misappropriation of MacDermid's trade secrets, including the actual loss incurred by MacDermid and the unjust enrichment enjoyed by Selle as a result of his wrongful acts as provided by the DTSA.

68. MacDermid is also entitled to exemplary damages and attorney's fees as Selle's conduct was willful and malicious.

## COUNT TWO:
## VIOLATION OF THE TENNESSEE UNIFORM TRADE SECRETS ACT

69. MacDermid incorporates by reference all paragraphs above as if fully restated herein.

70. MacDermid's Confidential Information and Trade Secrets constitute trade secrets as that term is defined in the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.* ("TUTSA") because they derive independent economic value from not being generally known and are not readily ascertainable by proper means by another person who can obtain economic value from their disclosure or use.

71. MacDermid's Confidential Information and Trade Secrets are also the subject of efforts that are reasonable to maintain their secrecy.

72. Upon information and belief, Selle knowingly used and disclosed MacDermid's Confidential Information and Trade Secrets without its consent by wrongfully sharing this information with third parties, despite his duty to maintain their secrecy, thus giving rise to claims under the TUTSA.

73. MacDermid has been damaged by Selle's unauthorized misappropriation of MacDermid's Confidential Information and Trade Secrets.

74. MacDermid is entitled to monetary relief against Selle under TUTSA for his misappropriation of MacDermid's trade secrets, including the actual loss caused by the misappropriation and the unjust enrichment enjoyed by Selle as a result of his wrongful acts as provided by the TUTSA.

75. MacDermid is also entitled to exemplary damages and attorney's fees as Selle's conduct was willful and malicious.

## COUNT THREE:
## BREACH OF CONTRACT

76. MacDermid incorporates by reference all paragraphs above as if fully restated herein.

77. Selle's Employee's Agreement constitutes an enforceable contract between Selle and MacDermid.

78. Selle materially breached Paragraph 2 of the Employee's Agreement by impermissibly sharing MacDermid's Confidential Information and Trade Secrets and using MacDermid's Confidential Information and Trade Secrets for his personal benefit and for the benefit of Calvary.

79. Selle materially breached Paragraph 3 of the Employee's Agreement by impermissibly competing with MacDermid and wrongfully soliciting MacDermid's customers while he was still employed by MacDermid and likely thereafter.

80. The material breaches of Selle have directly and proximately caused damages to MacDermid in an amount to be determined at trial.

## COUNT FOUR:
## CONVERSION

81. MacDermid incorporates by reference all paragraphs above as if fully restated herein.

82. Selle intentionally appropriated and exercised dominion over MacDermid's corporate funds for his own use and benefit in defiance of MacDermid's rights when Selle made the Unauthorized Shipments.

83. MacDermid was damaged by Selle's wrongful conversion of its corporate funds.

84. MacDermid is entitled to the cost of the Unauthorized Shipments plus interest.

## COUNT FIVE:
## BREACH OF FIDUCIARY DUTY

85. MacDermid incorporates by reference all paragraphs above as if fully restated herein.

86. As an employee of MacDermid, Selle owed the fiduciary duties of care and loyalty to MacDermid.

87. He has breached these duties by misappropriating monies from MacDermid, by improperly taking information that belongs to MacDermid upon his termination, by self-dealing, and working for other companies while working for MacDermid, among other wrongful acts.

88. Selle's breach of his fiduciary duty as described herein has damaged MacDermid.

89. Selle is liable to MacDermid in an amount in excess of $75,000, plus punitive damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

Wherefore, MacDermid respectfully prays for the following relief:

1. That the Court empanel a jury;

2. That the Court find that Selle is liable for violation of the TUTSA and that his actions in doing so were willful and malicious;

3. That the Court find that Selle is liable under the DTSA and that his actions in doing so were willful and malicious;

4. That the Court find that Selle breached his Employee's Agreement with MacDermid;

13

5. That the Court award MacDermid the cost of the Unauthorized Shipments plus interest;

6. That the Court find that Selle has violated his fiduciary duty to MacDermid and award it all allowable damages that have resulted from this conduct;

7. That the Court award MacDermid exemplary damages to the extent permitted by law;

8. That the Court award MacDermid punitive damages in an amount sufficient to punish Selle for his intentional, malicious, and reckless misconduct, and to deter others from similar misconduct;

9. That the Court award MacDermid its costs and reasonable attorney's fees incurred in prosecuting this action;

10. That the Court award MacDermid pre- and post-judgment interest; and

11. That the Court grant all further relief to MacDermid as it deems equitable and justified.

DATED: November 25, 2024

Respectfully submitted,

*/s/ Paige Waldrop Mills*
Paige Waldrop Mills (BPR No. 16218)
BASS, BERRY & SIMS, PLC
150 Third Avenue, Suite 2800
Nashville, Tennessee 37201
Tel: (615) 742-7770
pmills@bassberry.com

*Counsel for*
*MacDermid, Incorporated d/b/a MEIS*